# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 22-CR-4071-LTS-KEM |
| vs. | **REPORT AND RECOMMENDATION** |
| BRITT ARTHUR LANDER, | |
| Defendant. | |

Defendant Britt Arthur Lander moves to suppress statements he made to officers after his arrest, arguing that he did not validly waive his rights under *Miranda v. Arizona*.[1] Doc. 34. Although law enforcement read Lander his *Miranda* rights, Lander argues that he was too intoxicated to validly waive his rights. I recommend **denying** Lander's motion to suppress (Doc. 34).

## I.    BACKGROUND[2]

On the afternoon of June 21, 2022, Alcester Police Department Chief Austin Schuller[3] conducted a traffic stop of a vehicle driven by Lander based on a missing front license plate. Lander admitted he did not have a valid license (dispatch later informed Chief Schuller it was revoked). Def. Ex. A. Chief Schuller asked Lander to come sit in the police car while he completed paperwork. *Id*. When Lander exited his car, Chief

---

[1] 384 U.S. 436 (1966).

[2] The facts in this section are taken from the testimony at the suppression hearing unless otherwise noted.

[3] Since the time of the traffic stop, Chief Schuller has obtained new employment as a deputy with the Union County Sheriff's Office; I refer to him as Chief Schuller throughout this order to make clear the circumstances during the day in question and to avoid using two titles.

Schuller began a pat-down search, and Lander revealed a methamphetamine pipe, a marijuana pipe, rolling papers, and "a little bit of marijuana" in his pockets. *Id.*

Another officer arrived on the scene, and Chief Schuller directed him to begin searching Lander's car. *Id.* Ultimately, law enforcement found two packages of methamphetamine weighing a combined 7 grams (with packaging).

During questioning in Chief Schuller's patrol car, Lander indicated that he was meeting a friend on this road for a car part. *Id.* As the name of the friend was a known drug target, Chief Schuller contacted South Dakota Criminal Investigation Agent Ryan Pennock. Chief Schuller also moved Lander from the front seat of the patrol car to the backseat, stating that he was not under arrest but that he would read him his *Miranda* rights to be safe; Lander indicated he understood his rights and that he did not have to talk (by nodding his head). *Id.* Chief Schuller continued to question Lander about his plans that day, and Lander repeatedly denied that the purpose of the meet-up was to buy drugs. *Id.* Ultimately, Chief Schuller arrested Lander and transported him to the Alcester police station.

Chief Schuller testified at the suppression hearing that during the initial encounter, Lander appeared nervous but not impaired. He testified that observed signs of impairment included heightened nervousness, tense facial muscles, and fidgety hands, but that he ultimately determined Lander did not need to undergo field sobriety tests. He testified that Lander became more comfortable with time. He acknowledged that Lander repeatedly asked him to retrieve a soda pop from his car, which he did eventually, and that he gave Lander a bottle of water in the interview room, but he did not assign any significance to Lander's thirst.

Chief Schuller's body camera footage of the encounter shows that Lander appeared to be talking normally and in a manner indicating comprehension. *Id.* It also suggests that Chief Schuller was more concerned about Lander's substance use during the encounter than his testimony at the hearing let on. Once Lander was in the patrol car for questioning (and after Chief Schuller found the methamphetamine pipe and other items

2

on his person), Chief Schuller asked Lander when he had last used. *Id.* Lander responded, "not today." *Id.* Chief Schuller then asked to look at his eyes. After continued questioning from Chief Schuller about Lander's plans that day (and whether they included buying drugs), Lander responded to a question by talking very quickly and in a manner that was hard to understand. *Id.* Chief Schuller told Lander that he was currently giving him some indications of controlled substance use. *Id.* Lander explained that he gets really nervous around cops, even if he has not done anything wrong. *Id.* Chief Schuller told Lander that he was going to conduct field sobriety tests (he never did). *Id.* Chief Schuller continued talking to Lander about his plans, and Lander revealed that he and his friend had agreed to meet on 306th Street without specifying a time. *Id.* Chief Schuller contacted other law enforcement to look for the drug target on 306th Street, not 302nd Street (the road they were currently on), saying that Lander was "so screwed up he thought he was on 306." *Id.* Once at the station, Chief Schuller again asked Lander if he had used that day, adding, "'cause your actions kind of..." and trailing off. *Id.* Lander's response was mumbled but included that "it don't matter anyway," that he hates lying and liars, that he doesn't want to be a liar, and that he doesn't want to be a drug addict but is one. *Id.*

Agent Pennock arrived at the station and began interviewing Lander around 3:15 p.m., less than an hour after Chief Schuller had read Lander his *Miranda* rights. Recordings of the interview show that Lander initially spoke fast, was hard to understand, and gave rambling responses (*id.*; Govt. Ex. 1)—which is consistent with Agent Pennock's testimony that Lander was extremely nervous at the beginning of the interview but became more relaxed as time went on. Agent Pennock introduced himself and explained the benefits of cooperation. *Id.* Lander indicated that he did not want to be "that guy" again, saying several times that he was a drug addict and could not kick the habit. *Id.* After about four minutes of back-and-forth where Agent Pennock tried to convince Lander to cooperate, Agent Pennock re-read Lander his *Miranda* rights, speaking very quickly. *Id.* After Agent Pennock said an attorney would be appointed if

3

he could not afford one, Lander indicated he could not afford anything. *Id.* Agent Pennock reiterated that one would be appointed then. *Id.* Agent Pennock further explained:

> Just because you agree to those, as [Chief Schuller] said that you had, right, if there's something that I ask you, and you're like, . . . I'm not telling you that, [just say you're] not telling me that. No pressure.

*Id.* Lander responded, laughing as he said it, "My old lady is my attorney, I want her present." *Id.* Agent Pennock responded that "the reason we don't do that is a number" and that two people cannot keep a secret. *Id.* Lander continued to talk about his significant other and his trust in her, requesting her presence. *Id.* Agent Pennock said that Lander could tell her all about it later. *Id.* Agent Pennock then began questioning Lander about the events of that day. *Id.* The video evidence shows that during this portion of the interview, Lander's responses were coherent, that he rambled less, and that he talked slower—consistent with Agent Pennock's testimony that Lander's nerves lessened as the interview went on. Agent Pennock testified that Lander may have been under the influence but that he was not so intoxicated that his cognitive abilities were affected. Agent Pennock noted no delays between his questions and Lander's answers and no instances where Lander's responses indicated confusion.

Agent Pennock's interview lasted less than two hours. At its conclusion, due to his cooperation, Lander was released.

Lander moves to suppress the statements he made on June 21, 2022. Doc. 34. He argues that he could not validly waive his *Miranda* rights due to being intoxicated from methamphetamine usage. The Government resists. Doc. 38. I held an evidentiary hearing on the motion to suppress at which Chief Schuller, Agent Pennock, and Lander testified. I also admitted into evidence an audio recording of Agent Pennock's interview with Lander (Govt. Ex. 1) and body camera footage of Chief Schuller's traffic stop (which also shows some of the interview) (Def. Ex. A). Doc. 48.

4

At the hearing, Lander testified that he had been released from jail on Tuesday, June 14, 2022, and that he had steadily used methamphetamine from that time to the time of the traffic stop on June 21. He testified to methamphetamine usage every few hours and that he did not recall sleeping. He indicated that he had started the week with a half ounce of one kind of methamphetamine and an 8 ball of another kind of methamphetamine, approximately 17 to 19 grams in total, and that the methamphetamine found during the traffic stop (measuring 7 grams) was all that remained (meaning he had consumed 10 to 12 grams of methamphetamine in the week leading up to the traffic stop). He testified that during the interview, he was not in his right mind, as he could not sit still and he needed to sleep. He said he felt like he was dying of thirst, and he did not understand what was going on. He did not think he was able to make coherent decisions and felt pressured to talk, and he asked for his fiancé's presence during the interview because he felt like he was making the wrong decision and being tricked.

The Government requested at the suppression hearing that the court take judicial notice of Lander's criminal history in his pretrial services report (Doc. 13). Lander did not resist. The pretrial services report reflects that Lander has been arrested on numerous occasions. *Id.* It also shows that Lander was previously convicted of a federal drug conspiracy offense, for which he was imprisoned for three years and on supervised release for a little over three years (which was revoked twice and modified once). *Id.*

## II. DISCUSSION

Under *Miranda*, a suspect subject to custodial interrogation must first be advised "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so

5

Case 5:22-cr-04071-LTS-KEM    Document 52    Filed 03/28/23    Page 5 of 9

desires."[4] The suspect must waive these rights before the interrogation can proceed.[5] A valid *Miranda* waiver must be knowing, intelligent, and voluntary.[6] For a waiver to be knowing and intelligent, "the suspect must have waived his rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"[7] For a *Miranda* waiver to be voluntary, it must be "the product of a free and deliberate choice[,] rather than intimidation, coercion, or deception."[8] The Government bears the burden of proof to show waiver by a preponderance of the evidence.[9]

The court considers "the totality of the circumstances in determining whether a suspect's waiver [wa]s valid."[10] Neither sleeplessness nor fatigue automatically render a waiver involuntary or unknowing and unintelligent.[11] Intoxication renders a *Miranda* waiver involuntary only if the defendant is so impaired that it "caused [his] will to be overborne."[12] And a defendant's behavior may "show[] that he understood his rights and

---

[4] 384 U.S. at 479.

[5] *Id.*

[6] *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011).

[7] *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

[8] *Id.* (quoting *Moran*, 475 U.S. at 421).

[9] *Colorado v. Connelly*, 479 U.S. 157, 167-68 (1986).

[10] *United States v. Figueroa-Serrano*, 971 F.3d 806, 814 (8th Cir. 2020) (quoting *Vinton*, 631 F.3d at 483).

[11] *United States v. Turner*, 157 F.3d 552, 555-56 (8th Cir. 1998) (addressing whether *Miranda* waiver was knowing and holding that the court has "declin[ed] to adopt a per se rule when confronted with intoxication" (cleaned up) (quoting *United States v. Makes Room,* 49 F.3d 410, 415 (8th Cir. 1995))); *United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990) ("Intoxication and fatigue do not automatically render a confession involuntary . . . .").

[12] *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008) (quoting *Casal*, 915 F.2d at 1229).

6

knowingly waived them" despite intoxication.[13]

Here, although there is some evidence that Lander was under the influence (including speaking fast, rambling at times, and fidgeting), the audio and video recordings show he was "in control of his faculties" and not "so intoxicated that he was unaware of his rights and the consequences of waiving those rights."[14] The interrogation was relatively short, less than two hours, and Lander had prior experience with law enforcement.[15] Less than an hour before the interrogation, Lander affirmatively indicated he understood his rights and that he did not have to talk to law enforcement; and he was reminded of his *Miranda* rights before saying too much during the interview (law enforcement did not ask whether he understood his rights a second time, however).[16] Lander admitted to being a drug addict, and law enforcement suspected he might have recently used methamphetamine, but Lander did not tell law enforcement the extent of his use nor that he had not slept for multiple days.[17] Lander answered law enforcement's questions in a coherent manner and did not indicate that he was confused or felt compelled to speak.[18] Overall, the evidence shows that Lander was not so fatigued or impaired that

---

[13] *Turner*, 157 F.3d at 556.

[14] *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007).

[15] *See Makes Room*, 49 F.3d at 415 (noting that "age, education and experience are factors in the voluntariness analysis," but "not dispositive").

[16] *See Figueroa-Serrano*, 971 F.3d at 815 (rejecting argument "that the one-hour gap between the warnings and interrogation means that [the defendant] did not knowingly waive his rights"); *Gaddy*, 532 F.3d at 788 (when evaluating whether defendant's intoxication and fatigue rendered his *Miranda* waiver involuntary, noting defendant "acknowledged that he understood" his rights).

[17] *Casal*, 915 F.2d at 1229 (in upholding voluntariness of statement despite intoxication and sleeplessness, noting that during the interrogation, "police were not aware that [the defendant] had used methamphetamines recently and had gone without sleep for five days").

[18] *United States v. Daniels*, 775 F.3d 1001, 1004-05 (8th Cir. 2014) (holding that *Miranda* waiver and admissions were voluntary, despite intoxicated and fatigued state, when defendant "answered the officers' questions coherently and intelligibly"); *United States v. Howard*, 532

7

he was unable to knowingly, intelligently, and voluntarily waive his *Miranda* rights.

## III. CONCLUSION

I recommend that the district court **deny** Defendant's motion to suppress (Doc. 34).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule

---

F.3d 755, 763 (8th Cir. 2008) (holding that although defendant indicated to officers that he was high, confession was voluntary when defendant "was coherent and spoke in a manner which indicated he understood what was happening"); ***United States v. McCammon***, No. CR13-4099-DEO, 2014 WL 268573, at *1-3, *6-7 (N.D. Iowa Jan. 23, 2014) (finding defendant's *Miranda* waiver voluntary when officers discovered defendant passed out in a vehicle at 1 a.m. and obviously impaired—his speech was thick and mumbled, he had a hard time keeping his eyes open, and he was nonresponsive to some questions; officers took defendant to a hospital, where he dozed; and at the time of the interview at 2 a.m., defendant made regular eye contact, did not have trouble staying awake, was able to track the conversation, and described right to remain silent in his own words), *report and recommendation denied as moot*, No. 13-CR-4099, Doc. 50 (N.D. Iowa May 23, 2014) (holding suppression motion rendered moot by defendant's guilty plea); ***United States v. Smith***, No. 4:12-CR-205, 2013 WL 322532, at *6-7 (D.N.D. Jan. 28, 2013) (holding defendant's *Miranda* waiver voluntary when he appeared intoxicated, but not so intoxicated that his will was overwhelmed; the court noted he "provided coherent, relevant, and understandable responses to questions"); ***United States v. Sanders***, No. 807CR34, 2007 WL 1490483, at *2, *4 (D. Neb. May 21, 2007) (holding defendant's intoxication did not render *Miranda* waiver involuntary when defendant told officer he was tired and "woozy" but "keeping it together"; defendant appeared glossy eyed and slouched in his chair during the interview; and at one point during the interview, defendant stared off blankly and had stopped paying attention; because overall, defendant's answers to questions demonstrated "he knew what was going on and . . . was aware of his circumstances") (adopting report and recommendation); *see also* ***United States v. Watters***, 572 F.3d 479, 483 (8th Cir. 2009) (rejecting argument that defendant's consent to search car was involuntary based on intoxication when defendant was "coherent and able to answer the officers' questions").

on the objections.[19] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[20] Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[21]

**DATED** March 28, 2023.

*Kelly K.E. Mahoney* (signature)
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[19] **LCrR 59**.

[20] *See* **Fed. R. Crim. P. 59**.

[21] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).